All right. Counsel for the appellant, please proceed. Thank you. Good afternoon, your honors. May it please the court, my name is Michael Kimberly and I represent the Appellant Pharmaceutical Care Management Association. Your honors, I'd like to begin today by addressing ERISA preemption and then I'll follow in the back half with a discussion of Medicare preemption. So as a starting point, the Supreme Court has established two general prongs of ERISA preemption, as the court now knows well, the reference to prong and the connection with prong. In earlier proceedings, the court held that the laws challenged here were invalid under the reference to prong and our position after the Supreme Court's decision in Rutledge is that the court can and should reach the same conclusion, but under the connection with prong of the analysis. Now as relevant here, the Supreme Court has recognized two categories of connection with preemption. First, ERISA's express preemption clause will preempt any state law that binds an ERISA sponsor or administrator to a particular choice in the design structure or administration of a covered benefit. That's Rutledge at page 480 and Shaw at page 97. It also preempts state laws that deal with subject matters that are covered by ERISA itself and here as relevant that includes disclosures to plan participants and avoidance of conflicts of interest. Now we've challenged now before the court as the matter now stands nine provisions under ERISA appearing in section 16.1 and 16.2 and those nine provisions fall into two broad categories. First, four concern benefit design falling into that first category of connection with preemption. Five then concern disclosures and conflicts of interest falling into that second category of connection with preemption. And if I may, I'd like to start with benefit design. And I think to understand our position on this front, your honors, it's critical to understand first what a prescription drug benefit actually is. Of course, it isn't the drug itself. It is instead a contractual entitlement to receive reimbursement for the purchase of a covered drug under the terms provided in plan documents. And so anybody who shopped for prescription drug benefits knows that this sort of a benefit really has four elements. The first element is what drugs are covered. The second element is what pharmacies from which participants can get covered drugs. The third element is what they're going to pay out-of-pocket when they go to a pharmacy, a network pharmacy, to get a covered drug. That's co-pays and co-insurance and the like. And then the fourth element is premiums. And we're interested here in the second and third elements of benefit design. So two provisions concern accreditation standards that plans and their PBMs acting on their behalf may use to construct pharmacy networks, that group of pharmacies from which plan participants can get covered benefits. And this is section 16.111 and 16.24. Now the sorts of accreditation standards that PBMs and the plans that they serve are interested in considering are things like minimum inventory requirements. This would include business ethics standards and controls. So that's making sure first that pharmacies have business ethics codes in place, which might forbid things like pharmacists getting financial incentives for meeting certain financial metrics, which creates conflicts of interest. And also histories of fraud and abuse or other federal sanctions records. Other accreditation considerations that plans are interested in are ensuring that pharmacies engage in adequate drug labeling and completeness of instructions included with drugs when they're dispensed. As far as dispensing goes, it might include, for instance, adequate machines and equipment to ensure that it can be done in a safe way. It also includes business requirements like liability insurance standards. And this, among other places in the summary judgment record, can be found at docket 33-5. Counsel, let me interrupt you. Let me interrupt you if I may. Aren't those just inefficiencies alone which are not enough to trigger ERISA preemption? I'm quoting the Supreme Court. No, Your Honor. It is not a matter of inefficiencies. A plan sponsor, through its PBM, a plan sponsor's ability to consider those additional characteristics of pharmacies above and beyond the bare minimums necessary for licensure go to the design of the benefit itself. Maybe a quick example can draw this out. A plan sponsor may well offer two drug benefits. One drug benefit might offer a very narrow network. This is a network where the plan directs participants to a smaller number of pharmacies that meet much higher requirements for accreditation and other standards that ensure that they provide drugs in a very cost-effective and efficient and safe high-quality way. This is a less convenient benefit for the participant because they have fewer pharmacies to go to, but they'll pay a smaller premium. Alternatively, the sponsor might offer a second prescription drug benefit, giving the participant a plan, and this benefit might have a much broader network of pharmacies. This network would meet fewer standards for inclusion. It would be more convenient because there would be more places that the plan participant could go, but the drugs would be provided in a less efficient way. There would be less leverage with each pharmacy to extract greater discounts, and so premiums would go up, and maybe co-pays would go up as well. These are two substantively different benefits, and what North Dakota is saying with 16.111 and 16.24 is that plan sponsors through their PBMs may not do this. The only thing that a plan sponsor may consider is whether a pharmacy is licensed by the state of North Dakota, and so these sorts of additional above-licensing requirements are simply off the table under these provisions. That is a matter of benefit design through and through. Much the same, Your Honors, can be said for mail service, which is Section 16.18 and Section 16.19. There are additional credentialing standards that implicate the other two provisions I just discussed concerning mail service, like ensuring that mail service pharmacies have adequate procedures for handling temperature-sensitive drugs in the mail. Even aside from that, Your Honor, it's a matter of network design and plan design and benefit design, because plan sponsors typically have two separate networks. There's what I'll call the brick-and-mortar network, where people can walk in and get drugs dispensed and walk out of the store with that drug, and there's a separate mail service network. That mail service network, it's not a matter of convenience to have lots of mail service pharmacies included, because it's all just being done over the phone or the internet, and so this is an opportunity for a plan to drive more volume to a smaller number of very high-quality mail service pharmacies. Now, 16.18 effectively means that any pharmacy that is in the brick-and-mortar network must also be included in the mail pharmacy network. What does it say there? The verb is may, for starters. What does it say, what you said, and how does it in any way address a PBM? Just to read it. Excuse me, 16.18, I will, Your Honor, I'll read it. It says, a pharmacy or pharmacist may mail or deliver drugs to a patient as an ancillary service of a pharmacy. Now, insofar, Your Honor, as what that provision means is that pharmacies, that PBMs and plans may not forbid pharmacies from mailing drugs, we have no objection to it, but what we do have an objection to, and what plan sponsors who are supporting PCMA in this case have an objection to, is the idea that a plan sponsor must cover the delivery of a drug or a mail service dispensed drug as a covered drug. It is typical in the design of benefits that drugs may be dispensed via mail service, but only to certain pharmacies that are appropriately credentialed. Insofar as what 16.18 is doing is requiring coverage of drugs delivered by mail, it is inconsistent with the Supreme Court's decision saying that states may not dictate a plan design. 16.19, in turn, states that PBMs and the plans that they serve may not prevent pharmacies from charging a shipping and handling fee. And here again, insofar as no plan or PBM is concerned with telling a pharmacy what they can or cannot do with a patient outside the scope of a plan benefit. The only question here is what are the terms and conditions on which plan participants can expect to get a covered drug dispensed from a network pharmacy? And cost sharing, as I was talking about before, otherwise known as co-pays or co-insurance, the out-of-pocket costs that plan participants incur when they get a covered drug is a key element of benefit design. And 16.19 effectively rewrites plan documents by requiring plans, insofar as this is about covered drugs, by requiring plans to permit pharmacies to add additional out-of-pocket expenses at the time that a drug is dispensed by mail. So a plan might promise, for example, that when a plan participant gets a generic drug by mail, they're going to pay a $10 co-pay and that's it. Under 16.19, it'll be $10 plus whatever the pharmacy wants to charge for shipping and handling. Again, rejiggering the design of the plan benefit. Counsel, this is Judge Smith. Why doesn't that go to a cost question? And that it's not really an issue of the design, but more of just how much it's going to cost? Well, because it's not a question of cost to the plan or even to the PBM. It's a requirement that PBMs and the plans that they serve cannot... So, for example, here's the simplest way to put it. A plan might offer a benefit that says, when you order your generic drugs by mail, you will pay nothing out-of-pocket. That is, your co-pay will be zero. This provision effectively overrides that promise in plan documents, reorienting the nature of the benefit for the plan participant. It isn't a matter of whether and under what circumstances the PBMs have to require certain charges. The point is, by operation of 16.19, plans have to permit network pharmacies to assess additional charges against participants in violation of plan documents. Before you leave 8 and 9, I thought the other side says they're going to read them very literally and not the way you read them. Well, Your Honor, there is some confusion on this score, to be honest. I'm not entirely clear what my friends on the other side have to say about this. Insofar as what they're saying is, plan sponsors have to cover these drugs, even when they're delivered by mail, but you don't have to cover the cost of the shipping and handling. Really what they're saying is just what I was just explaining to Chief Judge Smith, that they get to add additional out-of-pocket expenses for plan participants. I'll be very interested to hear what my friend on the other side has to say about this, and maybe I'll have a chance to come back and rebuttal and address it. I'll say something briefly, Your Honors, about disclosures. Really, ERISA, as we've explained, and as the Supreme Court held in Gobey, ERISA regulates required disclosures, and that really ought to be the beginning and end of the analysis. Two sections here, 16.15 and 16.17, concern disclosures of plan information to plan participants, but ERISA already governs that extensively. I'd point the court to 29 CFR 2520.102-3, and that's paragraphs J and L, and they specify all the information, all of the plan information that's got to be disclosed to plan participants. 16.15 and 16.17 add additional information that either may or must be disclosed to plan participants, and are therefore preempted straightforwardly under the rationale of Gobey. Two other provisions, 16.110 and 16.22, concern disclosures to pharmacies and plans, but these are provisions that are fundamentally like the disclosures that issue on Gobey, issues of plan administration. Plans are sophisticated consumers of services. They're perfectly capable of understanding and protecting their interests in negotiations with PBMs, and I'll remind the court that, again, these plan sponsors are on our side of the case. They may and often do agree with PBMs that certain information will remain in the custody of the PBM. That of itself is a matter of plan administration. There are significant implications when information is made available to, for instance, plan sponsors, which as fiduciaries have an obligation to process it in certain ways and take into account that information in making decisions. It is a reasonable choice instead to make a determination in exchange for cost concessions that certain information will remain with the PBM. To say otherwise is effectively to dictate to plan sponsors that they must administer their benefits in a particular way, inconsistent with what the Supreme Court said in Gobey. Much the same goes for 16.23, which concerns PBMs with an ownership interest in a mail-order specialty pharmacy. If a plan sponsor wishes to engage with a PBM that has an ownership interest in a mail-order pharmacy, under principles announced in Gobey and Shaw and others, it is the prerogative of the plan sponsor to do that as a matter of plan administration. I see now I'm into my rebuttal time. I'm happy to address any other questions or otherwise reserve my time. I don't see any. Thank you, Mr. Kimberlin. Thank you. Mr. Smith. Thank you, Chief Judge Smith, and may it please the court. Nearly all states have enacted laws regulating PBMs. In fact, 34 states and the District of Columbia filed an amicus brief defending North Dakota's laws. And there's a reason the states are so uniform here. In the absence of federal regulation, PBMs have engaged in a number of harmful practices, plans, patients, and pharmacies. And yet, after the states stepped in to fill the void, PCMA has attempted to weaponize federal preemption to shut down state regulation of PBMs, even in areas where the federal government does not regulate. Neither ERISA nor Medicare preempt the state law provisions still at issue here. And I'll start with ERISA. North Dakota's laws do not have a connection with ERISA for two reasons. First, the laws do not force ERISA plans to adopt any scheme of substantive coverage. As the District Court correctly found in this case, North Dakota's laws have no bearing on whether a patient is eligible for coverage or whether a drug is covered by a plan. Second, North Dakota's laws do not regulate any central matter of plan administration. I'll walk you through a few of the provisions to demonstrate this. We'll start with mail order dispensing, which was a subject that Mr. Kimberly addressed. Those are 16.18 and 9 of the North Dakota laws. Those provisions have no bearing on benefits, coverage, or plan administration. If a patient's drug is covered, they merely provide that if the patient elects the service, it can receive a drug from a retail pharmacy by mail, and the patient would have to cover that cost. Nothing changes as far as what the plan's obligations are. Instead, PCMA makes the argument that this has to do with plan design. I'll note that PCMA and its amici made the same argument in Rutledge, and there the court shot it down. There, PCMA claimed that Arkansas' appeal and decline to dispense provisions affected plan design. If you'll note on the latter, the decline to dispense provision literally said that a beneficiary could not receive a benefit at a network pharmacy if it was implicated, and the Supreme Court said no. Those provisions do not require plans to provide any particular benefit to any particular beneficiary in any particular way. The decline to dispense provision at issue in Rutledge is more onerous than any provision that is at issue here. I'll give you another example, the affiliated pharmacy disclosure and conflict provisions. Those are 16.22 and 16.23. The first provision on disclosure requires a PBM with an affiliated pharmacy to disclose to the plan the difference between what it pays its own pharmacy and what it charges the plan, and the second requires PBMs to act in the interest of the plan over their affiliated pharmacy. These provisions, again, have no bearing on benefits, coverage, or even plan administration, and the Supreme Court has clarified that ERISA does not preempt state laws that regulate the way in which services are provided by third-party service providers. I'll give you an example there, too. Insurers are certainly service providers to ERISA plans. In Travelers, this is at 514 U.S. 663, the Supreme Court clarified that, quote, laws that regulate only the insurer or the way in which it may sell insurance do not relate to benefit plans, and that's all that is at issue here. I understand from the briefing that PCMA has pointed out that these laws in certain provisions apply both to PBMs and third-party payers. Third-party payers are not at issue here. PCMA is a trade association of PBMs. It has brought this challenge exclusively on behalf of PBMs. The first line of PCMA's brief says that it is an as-applied challenge to the laws as applied to pharmacy benefit managers, and they would not have standing to challenge these laws as applied to third-party payers. So the court doesn't have to concern itself with those provisions, but even as applied to third-party payers, the laws still are not preempted as at issue here. On that score, PCMA emphasizes 16.110, which is a network disclosure provision. That provision requires a PBM or a third-party payer to disclose to pharmacies information that they need when they contract with a PBM. These provisions don't require the disclosure of any plan information. They require the disclosure of a PBM's business information, information about a PBM's network. Again, PCMA emphasizes this provision also applies to third-party payers. But even if it does, there's still no preemption here. Gabay was a narrow decision that said that plan information about plan reporting and plan disclosure, so information about members, eligibility, and claims was preempted as applied to an ERISA plan. None of those provisions are at issue here. The state has a compelling interest in regulating the types of disclosures that anyone makes when contracting. So I'll note in Gabay, the Supreme Court distinguished state laws that require incidental reporting, like state laws bearing on tax. And even in Rutledge, and this is in addressing the appeal provision, the Supreme Court said that a plan's relationship with providers is governed by state law. So conflicts, when a plan is in a dispute with a provider, are governed by state law. And that is the same for disclosure provisions as well. Those disclosure provisions don't have anything to do with the information that a beneficiary receives, reporting obligations to the state on claims or the like. Another provision, if I may briefly address, because we've heard a bit about conflicts of interest as they relate to ERISA. ERISA does not comprehensively regulate all conflicts. ERISA regulates fiduciaries, not plans. So that's the Supreme, or excuse me, service providers. That's what the Supreme Court said in Martins. PBMs are not fiduciaries. Their business model is incompatible with being a fiduciary because they do not act in the best interest of the participants of a plan. And ERISA's conflict provisions, that's 1106A and B, are addressed exclusively at fiduciaries. ERISA does not regulate third-party conflicts at all. And ERISA plans hire a variety of third-party service providers and professionals. So, for example, if ERISA preempted these laws, an attorney such as myself, if hired by a plan, could violate state conflict laws and the plan would have no recourse in a lawsuit against me. That is not right. That is not the correct interpretation of ERISA. As far as the accreditation provisions are concerned, those are at 16.11 and 16.24. Again, these have no bearing on whether or not a beneficiary is covered under a plan or whether or not a particular drug is covered. They don't even regulate networks. A PBM can, for example, have tiered networks where it pays some pharmacies more than others. What they do do is prevent PBMs from imposing arbitrary accreditation standards that essentially prevent patients from receiving drugs at a pharmacy if it's licensed and authorized to And again, this provision is less onerous than the decline to dispense provision that was at issue in Rutledge. There, a beneficiary couldn't receive a drug at all if that provision was implicated. And again, the Supreme Court said that that provision had no bearing on benefits, eligibility, or coverage determinations. I'll note that PCMA also argues that the gag clause provisions are preempted by ERISA. These are 16.15 and 16.7. PBMs began gagging pharmacies. They began preventing them from having conversations with their patients where the patient could pay less out of pocket for a drug than if they processed the claim through the plan. The federal government has condemned this as it applies to Part D plans, and states have the authority to do the same. None of this has to do with plan information. A PBM's business model involves charging a plan one price for a drug and reimbursing the pharmacy at a different rate. It is the information that PBMs hide from plans that this law authorizes pharmacies to disclose. And so for all those reasons, none of the provisions that are still at issue here are preempted by ERISA. I'll note that PCMA has withdrawn its challenge to provisions regulating fees. That's 16.1, 2, and 3. Those provisions are plainly not preempted following Rutledge as they relate to the money that transpires back and forth between plans and pharmacies. And 16.14, which regulates clawbacks, it's the same answer. I'll also note that PCMA didn't develop an argument, and any argument to that effect would be waived. Finally, they've withdrawn their challenge to 16.25. For all those reasons, the district court was corrupt when it decided that these laws do not have a connection with ERISA. And if there are no further questions on ERISA, I'll shift my attention to Medicare Part D. As for Medicare Part D, the provisions that remain at issue here, PCMA's arguments are again without merit. There is no preemption. This court in Rutledge correctly held... Mr. Smith, you concede Part D preemption on some of the provisions, do you not? That's correct, Judge Berender. We concede, for example, the GAG provisions are now preempted because Congress passed after this case was decided to know the lowest price act, which overlap. Let me go over at least the ones I thought you would concede. 16.12C? That's correct. 16.1... 5 and 6? 5 and 7, Your Honor. 5 and 7, correct, sorry. And 16.22? That is correct, Your Honor. There is substantive overlap in those areas. Congress or CMS has enacted a Part D standard, and that standard overlaps in substance with the state law provisions. PCMA does not need to demonstrate conflict, even if the standards are consistent, as they are with the anti-GAG provisions. There's still preemption there. But PCMA is attempting to establish preemption even in areas where there is no Part D standard on point. And this Court made clear in Rutledge, Congress made clear with the language it selected with preemption clause, and CMS has made clear that where Congress or CMS has not established a Part D standard, states are free to regulate. And there are many good reasons why states should continue to be laboratories in areas where Congress or CMS have not regulated. The GAG clause that we've discussed is a perfect example. There was no ban on GAG clauses. About a dozen states enacted such laws. They proved immensely popular because they ended a very harmful practice for patients that was causing patients a lot of money. Congress then responded after the states experimented, nationalized the standard for Part D plans, and now there's preemption. That's fine. There's a consistent standard. On the other direction as well, the standard works well because if CMS has concerns that a state is going out and is doing something in an area that they're not regulating but they deem inappropriate, CMS can end that practice with notice and comment rulemaking. A regulation from CMS would preempt state law just as well as Congress. But it's important to allow the states to continue to regulate in areas where CMS and Congress are not regulating. I'll give you some examples of those as well. The Affiliated Pharmacy Conflict Provision, which requires PBMs to act in the best interest of the plan when they have an affiliated pharmacy, nothing in Part D is on point there. PCMA concedes as much. This is at page 52 and 53 of its brief. Instead, it cites to regulations that say that Part D plans must notify CMS about loans and other special financial arrangements, and it cites to a regulation that says they have to adopt compliance programs that address, quote, waste, fraud, and abuse. None of this has to do with affiliated pharmacy conflicts, and for that reason, those provisions are not preempted. In reply, PCMA cites to the Part D manual. There's an open question about whether or not a manual is a standard, but assuming that it is one, the manual provision that they cite has to do with formulary committees that plans form and sponsor. This is at page 28 of their brief. Plans are set up committees that essentially approve which drugs are going to be part of the plan, and those committee members have to disclose their conflicts of interest to the plan. Again, none of this has to do with affiliated pharmacies, and so that provision is not preempted. As far as the PBM network disclosure provision, again, this is so that in contracting between plans and, excuse me, PBMs and pharmacies, pharmacies have information to make an informed decision. That's 16.110. PCMA concedes there's no Part D standard that authorizes or prohibits PBMs from making these types of disclosures. That's at page 25 through 26 of the reply. PCMA claims preemption because CMS requires other entities, plans, to disclose information to CMS, or it requires PBMs to disclose information to plans. The Part D standard does not work that way. There needs to be further overlap than just the general idea of disclosure in order for there to be preemption, and so again, there's no preemption there. Mail dispensing, this has been a topic for both ERISA and Medicare Part D. CMS has said that the states regulate the field of mail order pharmacy. That's in 83 Federal Register 16,595. I know that's a mouthful. PCMA takes several passages of the same regulation out of context to suggest that CMS never intended, excuse me, that CMS never intended to preclude PBMs from establishing their own standards for mail order pharmacy. That is not correct. If you review the relevant provisions of the Federal Register, what CMS said was that states set standards for mail order pharmacies. We have defined mail order pharmacies for purposes of access standards. Under Part D, participants have a right to access certain pharmacies within their locale, but what CMS said, and this is important, was that that definition did not mean to preclude retail pharmacies from offering a mail service. This is at 83 Federal Register 16,594. Again, there's no Part D standard on point that regulates these provisions. I still have a bit of time, so I'll address a few more of the provisions as well. The copay clawbacks, there's no Part D standard that PCMA specifies that deals with whether or not a pharmacy can retain a copayment amount. That's in their brief at 51 through 52. Instead, they cite to provisions that regulate low income beneficiaries. Under Medicare Part D, certain low income beneficiaries can pay a reduced copay. While that application is pending, and once it is approved, if a patient paid too much for a copay, the plan is required to reimburse the beneficiary for that amount. That provision doesn't have any bearing on whether or not a pharmacy can retain the copay amount that it received. It simply requires reimbursement by the plan, and PCMA has conceded, and this was in the lower court, that North Dakota's law presupposes that an insured will continue to pay the same copayment. It simply defines the relationship between the pharmacy and the PBM. As far as the accreditation and licensing provisions are concerned, this is 16.11, 16.24, and 16.25. PCMA argues that a clause called the Any Willing Provider Clause and a related provision allow PBMs to impose terms and conditions in excess of standards established by the states, as long as they are reasonable and relevant. Respectfully, we disagree. CMS has said that it is their longstanding policy to allow states to promulgate pharmacy practice standards. That statement is at 82 Federal Register 56,411, and CMS has looked to states to define what is reasonable and relevant for purposes of CMS. PCMA's argument would invite a chicken-and-egg scenario where CMS is looking to state law to provide the standards, but according to PCMA, that state law is preempted, and so there's nothing to look to. As far as the performance standards are concerned, PCMA cites to no Part D standard that authorizes a Part D sponsor to establish arbitrary standards in excess of state law. Again, the provision that PCMA cites simply says that pharmacies must, excuse me, Part D sponsors must require their pharmacies to make a representation that they comply with minimum standards for pharmacy practice as established by the states. For all these reasons, the provisions that are at issue here are not preempted by Part D, and ERISA, to conclude, does not preempt any of the provisions of state law at issue here, and with the exception of the four provisions that I discussed with Judge Grunder, the balance of the provisions are not preempted by Medicare Part D because there is no Medicare Part D standard on point, so we'd ask that you affirm in part, reverse in part, and remand with instructions to correct the judgment. Thank you, Your Honors. Thank you, Mr. Smith. I don't see any questions. All right. Mr. Kimberly, your rebuttal. Thank you, Your Honor. So, a few brief points in response. First, I think it's at this point rote to say that states may not dictate or forbid the design of benefits in particular ways. I think it's also rote, particularly following, both as a matter of common sense, but particularly following the Supreme Court's decision in the Miller case concerning any willing provider laws, that network design is benefit design, and in fact, nothing in Mr. Smith's presentation suggested otherwise. Now, if I'm right about that, then 16.111, 16.24, 16.18, and 16.19 are all preempted under ERISA because they all bear on network design, the way that plan sponsors, through their PBMs, are allowed to structure their provider networks. 16.22 and 16.23 are about perceived conflicts of interest. Now, my friend on the other side said that ERISA has nothing to say about conflicts of interest with third parties like this, but that's just wrong. Section 1108 deals with transactions involving parties in interest, and that's what a PBM is. It is a matter of direct regulation by federal authorities under 1108, the circumstances in which plans may engage PBMs to provide third party administration services. I would point the court also on this score to PCMA against the District of Columbia, a 2010 D.C. circuit case that we cited in our briefs. There, the D.C. circuit held that a state cannot make a PBM a fiduciary, and surely that's right as a matter of preemption. Rather than trying to make PBMs fiduciaries, what North Dakota here is doing is an end run around that rule by instead attempting to outlaw the arrangements that it thinks are inconsistent with fiduciary duties, but that's just six of one versus a half dozen of another. If ERISA preempts the making of PBMs as fiduciary duties, so too it must preempt states' efforts to outlaw the sorts of arrangements that state regulators are concerned might implicate conflicts of interest. I'll say now something about Medicare preemption, which I didn't get to in my opening presentation. Here, I think the court needn't get into the very specific conflicts that we dealt with at pages 42 to 54 of our opening brief. We'd be happy for the court to do so. We think we're in the right on each of those points. As the First Circuit said in the first medical case, and I'm quoting now, Congress's purpose in enacting Medicare's express preemption clause was to protect the purely federal nature of Medicare Advantage plans operating under Medicare. It said, in consequence, state laws do not and should not apply. Remember, this is a federal program. It is federally funded. It is federally regulated. The idea that states can come in and apply additional regulatory requirements on top of what the federal government already has imposed simply makes no sense. I think the court can get there by... I'm sorry to interrupt you. I know you have short time, but doesn't CMS take an opposite position many times, cited by your opponents? No, Your Honor. The citations that my friend on the other side offers are largely misleadingly crop-quoted. In fact, I think the court can and should just focus on 1395W-104, which says that Medicare Part D plans must permit the participation of pharmacies that are willing to meet the terms and conditions of the plan, and take that together with two other provisions. The first is 42 CFR 423-505, which says that every plan's terms and conditions must be reasonable or relevant as judged by CMS itself. So the check on that Any Willing Provider provision, which says you're allowed in if you're willing to meet the terms and conditions, is that the terms and conditions must meet CMS's specifications for what's reasonable. That by itself is enough to knock out 16.1 and 16.2, particularly when you consider that in addition, 1395W-111 forbids regulators from regulating the price structures for reimbursement, and in addition, interfering more generally with the negotiations between providers and plan sponsors in the formation of a network. If the court has no further questions, I'm happy to rest on our briefs. All right. Thank you, Mr. Kimberlin. Thank you also, Mr. Smith. Court appreciates both counsel's participation in our virtual forum this afternoon, and we will take the case under advisement and render decisions prompt as possible. Thank you for the briefing that you've provided and an excellent argument. I think it will be helpful. Thank you, counsel. You may be excused. Thank you, Your Honor. Madam Clerk, I believe that completes our